# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC YOST,  individually and on     :
behalf of a class of similarly situated  :
individuals,                           :
                                      :
          Plaintiff,            :
                                      :
         v.                  :     **3:16-CV-00079**
                                      :     **(JUDGE MARIANI)**
ANTHEM LIFE INSURANCE      :
COMPANY                      :
                                      :
         Defendant.          :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Eric Yost, individually and on behalf of a class of similarly situated

individuals, filed a putative class action complaint on December 11, 2015 in the Court of

Common Pleas of Pike County.  Doc. 2-1.  The case was removed to this Court on January

14, 2016.  Doc. 1.  On August 2, 2016, this Court granted in part and denied in part a motion

to dismiss the original complaint.  *Yost v. Anthem Life Ins. Co.*, 2016 WL 4151214 (M.D. Pa.

Aug. 2, 2016).  Count I of the original complaint, a claim for declaratory judgment that

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A.

§ 1720, is not preempted by ERISA, survived.  Plaintiff then filed an Amended Complaint on

August 18, 2016, re-alleging the claim for declaratory relief (Count II); and adding a claim for

breach of the ERISA plan's terms under the same preemption argument (Count III); a claim

for breach of fiduciary duty by misrepresentation (Count IV); and a claim for breach of the

1

fiduciary duty of loyalty (Count V). Doc. 26. Defendant Anthem Life Insurance Company ("Anthem") moved to dismiss Counts II through V of the Amended Complaint.[1] Doc. 30. For reasons stated below, this Court will grant Defendant's motion in part and deny the motion in part.

## II. FACTUAL ALLEGATIONS

The factual allegations are substantively similar to those of the original complaint, which the Court has detailed in its August 2, 2016 opinion. The plaintiff, Eric Yost, was insured for disability benefits under a Group Plan issued by Anthem through his former employer. Doc. 26 ¶ 6. On February 2, 2013, Mr. Yost was injured as a result of a motor vehicle accident, rendering him temporarily disabled. *Id.* ¶ 7. Mr. Yost submitted a claim for short term disability benefits to Anthem, and Anthem paid Mr. Yost $5,654.40 from February 2013 to April 2013. *Id.* ¶¶ 8, 9.

Separately, Mr. Yost sought damages against the alleged tortfeasor from the motor vehicle accident. *Id.* ¶ 10. The tortfeasor's insurer settled the action and compensated Mr. Yost for his personal injuries. *Id.* ¶ 11. Upon learning of the settlement, Anthem asserted a claim for reimbursement of the short term disability benefits it previously paid to Mr. Yost in

---

[1] Anthem did not "present a formal argument to dismiss Counts I or VI," but noted "that neither count states a cause of action or claim. Count I is merely a statement of additional background allegations, and Count VI is merely a statement of requested relief." Doc. 31 at 4, n. 1. This Court agrees. Count I is labeled as a claim for a "Rule of Decision." Count II is a claim for "declaratory relief." Both are based on the allegations that the MVFRL is "saved" from the ERISA preemption clause. Count I contains only factual allegations and does not ask for independent relief, nor does it cite to a legal provision that would entitle Mr. Yost to relief. The Court therefore construes Count I and II as a single Count. Furthermore, to the extent that Count VI is styled as a claim for "Relief Demanded," the Court construes it as a statement of requested relief, and not as an independent legal claim.

2

the amount of $6,997.25. *Id.* ¶¶12, 14. Mr. Yost's lawyer and an Anthem representative then attempted to negotiate a settlement as to Anthem's assertion for reimbursement. *Id.* ¶¶ 14-20.

However, after settlement discussions were underway, Mr. Yost's brought the MVFRL to the attention of the Anthem representative, arguing that Anthem has no right of recovery because in a motor vehicle action, Pennsylvania law prohibited reimbursement of "benefits...payable by a program, group contract or other arrangement" from a claimant's tort recovery. Doc. 2-1 at 92. Anthem's representative disagreed and responded that "after consulting with [Anthem's] in-house legal consultant[,] we have determined that the Pennsylvanian Code...does not apply to this matter given it appears that the Code is applicable when an automobile insurance carrier asserts reimbursement," and Anthem was not an auto insurance carrier. *Id.* at 99. Thus, Anthem continued to assert a claim for reimbursement of the disability benefits it paid to Mr. Yost. Doc. 26 ¶ 24. As a result, Mr. Yost's lawyer "has been forced to refuse to distribute to Mr. Yost the money in dispute" due to his ethical obligations, leaving Mr. Yost "subject to suit and loss of benefits based on the dispute over the [] funds." *Id.* ¶ 26.

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A

3

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). "[T]he presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face'…Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 and *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786–87 (citing *Iqbal,* 556 U.S. 679, 129 S.Ct. 1937).

## IV. ANALYSIS

### A. Counts II and III: ERISA Preemption

The ERISA preemption issue has been fully litigated and resolved in the previous motion to dismiss in Mr. Yost's favor. *Yost*, 2016 WL 4151214, at \*4. For the sake of brevity, the Court offers a simple summary of its previous opinion. Anthem argued—and continues to argue—that ERISA preempts § 1720 of the MVFRL because "it 'relates to' employer-benefit plans and is not saved from preemption by ERISA's 'saving clause.'" Doc. 31 at 1. The parties do not dispute that the Plan is subject to the provisions of ERISA because it was a "welfare benefit plan." Nor do they dispute that ERISA may "preempt" any state laws that "relate to" ERISA plans. However, a state law may be "saved" from preemption if it is "specifically directed toward the insurance industry." *Yost*, 2016 WL 4151214, at \*3 (citing *Kentucky Ass'n of Health Plans, Inc.v. Miller*, 538 U.S. 329, 334, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003)). And it is on the issue of the savings clause that the parties continue to disagree.

As stated in the Court's first opinion, the Supreme Court has already instructed that "[t]here is no dispute that the [Section 1720] falls within ERISA's insurance savings clause...Section 1720 directly controls the terms of insurance contracts by invalidating any subrogation provision that they contain. It does not merely have an impact on the insurance industry; *it is aimed at it.*" *FMC Corp. v. Holliday*, 498 U.S. 52, 60–61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (emphasis added) (internal citations omitted). Relying on the language

in *FMC Corp.*, the Court denied Anthem's motion to dismiss the claim for declaratory judgment.

Despite having had the opportunity to fully litigate this issue, Anthem devotes over half of its new motion to dismiss brief arguing that the Court's opinion is incorrectly decided, as well as three footnotes alluding to a motion for certification of an interlocutory appeal. Doc. 31, at 6-17, n. 1, 2, 5. Anthem also attached a draft brief it planned on filing for certification for appeal. Doc. 31-3. Both the new motion to dismiss brief and the attached draft brief contain substantively the same arguments that this Court has already considered in its previous opinion. The court appreciates the fact that Anthem sincerely believes that the first opinion was wrongly decided, but notes that a brief summary of the arguments would have been sufficient to preserve the issue, especially since Anthem has not cited any new legal developments since the Court issued its first opinion.

For the sake of completeness, the Court will expound upon its reasoning in holding that § 1720 of the MVFRL is not saved from ERISA preemption. There are "[t]hree provisions of ERISA [which] speak expressly to the question of preemption," the preemption clause, the saving clause, and the deemer clause. *FMC Corp.*, 498 U.S. at 58. The first preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The second "saves" such laws from preemption if they "regulate insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). And the third "exempt[s] self-funded ERISA plans

from state laws that 'regulat[e] insurance' within the meaning of the saving clause." *FMC Corp.*, 498 U.S. at 61, 111 S. Ct. at 409 (interpreting 29 U.S.C. § 1144(b)(2)(B)).

The key question in *FMC Corp.* revolved around the third clause, or the so-called "deemer clause." *Id.* What is at issue in this case, by contrast, is the second clause, or the "savings clause," i.e. the parties here dispute whether MVFRL is "saved" from preemption. However, it is not as if *FMC Corp.* left the Court with no elucidation, because the Supreme Court stated explicitly that "[t]here is no dispute that the Pennsylvania law falls within ERISA's insurance saving clause." Anthem argues that this language is "dicta." Doc. 31 at 20. It also argues that the Third Circuit's description of *FMC Corp.* is "dicta" when it noted that the Supreme Court "'already resolved' the saving clause question with respect to §1720." *Id.* at 15 n. 12 (citing *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 309 n.6 (3d Cir. 2006)). Anthem would have this Court rely on *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005) instead, which is a Third Circuit case that analyzed whether a *New Jersey* statute is saved under the ERISA savings clause. Anthem claims that *Levine* should control because it applied the most recent framework for determining whether the savings clause applies, as set forth by the Supreme Court in *Miller.* The *Miller* framework asks whether the state law is "specifically directed toward entities engaged in insurance" and whether it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Levine v. United Healthcare Corp.*, 402 F.3d 156, 165 (3d Cir. 2005) (quoting *Miller,* 538 U.S. at 341–42).

7

The Court is baffled by which parts of the case law Anthem decides are "dicta" and which parts are not. Anthem claims the relevant language in *FMC Corp.* is "dicta" because by "there is no dispute," the Supreme Court was "saying nothing more than that the parties have agreed, as reflected in the record, that the savings clause applied." Doc. 31 at 20. This Court disagrees. The Supreme Court went beyond mere reliance on parties' stipulations—it said, without qualifications or prompt, that "Section 1720 directly controls the terms of insurance contracts...It does not merely have an impact on the insurance industry; it is aimed at it." *FMC Corp.*, 498 U.S. at 61, 111 S. Ct. at 409. Had the Supreme Court meant to defer the savings clause issue to another day, and only rely on parties' stipulation in that specific case, the quoted language would have been superfluous, and contrary to an intention to preserve the legal issue for future decisions. Furthermore, this Court located the oral opinion announcement transcript for *FMC Corp.*, which stated that the holding "excludes self-funded ERISA plans, such as FMC's plan, from the reach of *state laws that regulate insurance.*" O'Connor, J., *FMC Corp. v. Holliday,* OYEZ (Nov. 27, 1990), available at https://www.oyez.org/cases/1990/89-1048. Thus, the Supreme Court clearly viewed Section 1720 as a state law that regulates insurance within the meaning of the savings clause.

Anthem argues the Court should ignore the language in *FMC Corp.* in favor of the analysis in *Levine,* which used the updated *Miller* framework, a case decided later than *FMC Corp.* Doc 31 at 15–17. But this Court *did* apply the *Miller* framework in its first

8

opinion. Specifically, the Court noted that "[a]t oral argument, counsel for the Defendant conceded that Section 1720 of the MVFRL substantially affects the risk pooling arrangement between the insurer and the insured." *Yost*, 2016 WL 4151214, at *3 (citing July 29, 2016, Hr'g Tr. at 15:3-5). And the Court further held that *FMC Corp.* instructed that Section 1720 is specifically directed toward insurance entities because it is "aimed" at the insurance industry. *Id.*

This holding is consistent with *Levine*. *Levine* focused on the fact that the New Jersey statute at issue applied to "'any civil action' and funds from 'any other source,'" and thus was not "specifically directed toward the insurance industry." *Levine*, 402 F.3d at 165 (internal quotation marks omitted). "Unlike New Jersey's statute," Section 1720 of the MVFRL "was specifically designed to regulate the escalating costs of motor vehicle insurance, not to provide a general rule of civil procedure." *Medlar v. Regence Grp.*, 2005 WL 1241881, at *5 n.3 (E.D. Pa. May 23, 2005). "Moreover, it is clear from the holding in [*FMC Corp. v.*] *Holliday* that Pennsylvania's anti-subrogation provisions regulate insurance." *Id. See also Danko v. Erie Ins. Exchange,* 630 A.2d 1219 (Pa.Super.1993) ("the MVFRL was enacted as a means of insurance reform to reduce the escalating costs of purchasing motor vehicle insurance in our Commonwealth") *aff'd,* 649 A.2d 935 (1994) (*per curiam*).

Had these cases not existed, Anthem may have been able to argue by analogy that *Levine*, analyzing a *New Jersey* statute, could be of persuasive value in this case. But the fact remains that *FMC Corp.* and its progeny have squarely addressed the *Pennsylvania*

9

statute at issue here, and found it to regulate insurance within the meaning of ERISA's

savings clause. In fact, the *Levine* Court took pains to distinguish from *FMC Corp.*:

> [Plaintiffs] direct us to several cases where the fact that a statute is 'aimed at' the insurance industry or intended to affect that industry supports the conclusion that it is specifically directed toward the industry. *See, e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990)...Examination of these cases, however, reveals a key difference from the case here: they explicitly regulated insurance...[*FMC Corp. v.*] *Holliday*, 498 U.S. at 55, n. 2, 111 S.Ct. 403 (defining 'coordination of benefits" as "a policy of insurance')."

*Levine*, 402 F.3d at 166.

For reasons stated in *Yost v. Anthem Life Ins. Co.*, 2016 WL 4151214 (M.D. Pa.

Aug. 2, 2016) and above, the motion to dismiss Counts II and III of the Amended Compliant

on the basis of ERISA preemption is denied.

## B. Count IV: Breach of Fiduciary Duty - Misrepresentation

Both Counts IV and V are breach of fiduciary duty claims pursuant to ERISA. ERISA

defines a "fiduciary" to include a person who "exercises any discretionary authority or

discretionary control respecting management of such plan" or "has any discretionary

authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §

1002(21)(A). "[W]hen the plan or policy permits some leeway in how an act is performed,

then the discretionary choice on how to perform that act is cabined by ERISA's fiduciary

duties." *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013). The term

is defined "not in terms of formal trusteeship, but in *functional* terms of control and authority

over the plan." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (internal citations omitted).

"Courts have consistently held that [t]he determination of whether a person is a fiduciary is fact-based, and cannot be determined in a motion to dismiss." *Drzala v. Horizon Blue Cross Blue Shield*, 2016 WL 2932545, at \*5 (D.N.J. May 18, 2016) (collecting cases). The Amended Complaint has sufficiently alleged that Anthem is a fiduciary. It alleges, for example, that Mr. Yost had to "submit[] a claim" for disability benefits to Anthem, that Anthem paid benefits to Mr. Yost after his submission, and that after it learned of his tort recovery, Anthem decided to assert a claim for reimbursement. Doc. 26 ¶¶ 8, 12. The Amended Complaint also incorporates the insurance plan as an exhibit. According to the document, Anthem has discretion to determine whether it will pay, deny, or review claims for benefits based on "evidence satisfactory to Us [defined elsewhere as "the insurer, Anthem Life Insurance Company]," which "must be received by Us at Our Administrative Office." Doc. 2-2 at 14. It determines what qualifies as a "Proof of Disability" on "evidence satisfactory to Us of a person's health or other information…that We use which enables Us to determine whether the person can become insured, or is eligible for an increase in coverage." *Id.* at 15. Furthermore, Anthem retains discretion over when the claimant must "undergo an independent medical exam as part of [his] proof of insurability." *Id.* at 18. Anthem is a fiduciary for ERISA purposes because it has the discretion in reviewing, granting, and denying benefits paid under the plan.

11

Anthem vigorously argues that its "inclusion of...reimbursement provisions in its insurance policies" is not a fiduciary act. It is true that the content of a plan is not subject to breach of fiduciary claims under ERISA. *See Pegram v. Herdrich*, 530 U.S. 211, 226, 120 S. Ct. 2143, 2153, 147 L. Ed. 2d 164 (2000) ("The specific payout detail of the plan was, of course, a feature that the employer as plan sponsor was free to adopt without breach of any fiduciary duty under ERISA, since an employer's decisions about the content of a plan are not themselves fiduciary acts"). However, Anthem misses the point of the Amended Complaint. The gravamen of Mr. Yost's claim is not that the Plan can never contain a reimbursement provision, but that Anthem relied on that provision in asserting a right of recovery against Mr. Yost's *third party tort settlement in a motor vehicle action*, despite that the fact that the MVFRL prohibits insurance companies from doing so.

Anthem also argues that to the extent Mr. Yost alleged a breach pursuant to 29 U.S.C. §1109(a), the breach of fiduciary duty claims should fail because it is "well-established that only plans, not plan participants, can receive relief under §1109." Doc. 31 at 24 (citing *Hein v. F.D.I.C.*, 88 F.3d 210, 222-23 (3d Cir. 1996)). This is a legal distinction without a practical difference. It is clear from the Amended Complaint that the two breach of fiduciary duty claims track ERISA § 404. *See e.g.* Doc. 26 ¶117 (Amended Complaint referencing "ERISA § 404, 29 U.S.C. § 1104(a)(1)(A), [which] imposes on Plan fiduciaries a duty of loyalty, that is, a duty to discharge his duties with respect to a Plan solely in the interest of the participants and beneficiaries"). *Hein* itself said that even if the Complaint

"*never* mentions § 404," it is "not a serious impediment to his claim [because the allegations] in fact closely track the language of § 404, and appellants had ample opportunity to respond to these arguments in their reply brief." *Hein*, 88 F.3d at 223.

Hein is a case heavily relied upon by Anthem's own briefs. The Court finds it hard to fathom how Anthem could have missed the crucial passage, which states that even when § 404 is not mentioned in the Amended Complaint (which it is in this case), if the complaint "closely track the language of § 404," and the other party has had "ample opportunity to respond in their reply brief," the court will not dismiss the claim. Besides the explicit reference to § 404 in the Amended Complaint, Plaintiffs' response brief also devotes a significant section to § 404, to which Anthem had an opportunity to respond by way of its reply brief. Anthem cites to *Hein* no less than three times in its motion papers, including once in its reply. Doc. 31 at 18, 20, Doc 33, at 11. Yet it seems to have missed the point. "Construing the pleading liberally," the Court finds the claims for breach of fiduciary duty "were properly brought before the district court pursuant to § 404." *Hein*, 88 F.3d at 223 (citing Fed. R. Civ. P. 8(f) (mandating construction of pleadings to do "substantial justice").

Having determined that Anthem is a fiduciary and that the § 404 claims are properly brought, the Court will nevertheless dismiss the first breach of fiduciary claims: misrepresentation. In order to make out a misrepresentation claim under ERISA § 404, a plaintiff must establish "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that

13

misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation."

*Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir.2001). "[W]hen a plan

administrator affirmatively misrepresents the terms of a plan or fails to provide information

when it knows that its failure to do so might cause harm, the plan administrator has

breached its fiduciary duty." *Romero v. Allstate Corp.*, 404 F.3d 212, 226 (3d Cir. 2005)

(citing *In re Unisys Corp*, 57 F.3d 1255, 1264 (3d Cir.1995)). An ERISA fiduciary "has a

legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but

unknown to the beneficiary, which the beneficiary must know for its own protection."

*Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93

F.3d 1171, 1182 (3d Cir. 1996).

The Court cannot say that Anthem's assertions of its right to reimbursement

constitute a misrepresentation of "the terms of the plan," or a failure to disclose material

facts "known to the fiduciary but unknown to the beneficiary." Anthem had consistently

worded its statements not as indisputable facts, but as "assert[ions]" of its right of recovery,

with which Mr. Yost's lawyer consistently disagreed. *See e.g.* Doc. 2-1 at 90, 92. And it

was, after all, Mr. Yost's lawyer who first brought the MVFRL to Anthem's attention, advising

Anthem that it does not "have an enforceable subrogation/reimbursement lien against Mr.

Yost's tort recovery." Doc. 26 ¶ 17, Doc. 2-1 at 92. Anthem then responded: "[a]fter

consulting with our in-house legal consultant we have determined that the [MVFRL] does

not apply to this matter given it appears that the Code is applicable when an automobile

14

insurance carrier asserts reimbursement" as opposed to a health insurance carrier. Doc. 2-1 at 99.

At that point, ERISA preemption has not been raised between the parties, but the dispute boiled down to a disagreement over how the reimbursement provision in the plan should be interpreted in light of the MVFRL. Because Mr. Yost's lawyer first raised the possibility that MVFRL precluded reimbursement, it is not a fact "known to the fiduciary (Anthem) and not known to the beneficiary (Mr. Yost)." More importantly, Anthem's assertion of its right to reimbursement cannot be categorized as a factual statement. It is merely a statement that Anthem interprets a provision of the plan differently from Mr. Yost's lawyer. "An honest statement of belief reasonably grounded in fact does not constitute a misrepresentation." *Taylor v. Peoples Nat. Gas Co.*, 49 F.3d 982, 990 (3d Cir. 1995). *See also Peterson v. A.T.& T.*, 2004 WL 190295, at \*9 (D.N.J. Jan. 9, 2004) ("a plan administrator cannot be held liable for comments honestly and reasonably made, but are only later proved incorrect.") *aff'd sub nom. Peterson v. Am. Tel. & Tel. Co.*, 127 F. App'x 67 (3d Cir. 2005).

There is nothing in the Amended Complaint that would suggest that Anthem misled Mr. Yost's lawyer with its assertions of reimbursement. Rather, the email correspondence reveals that Anthem was stating its interpretation of the reimbursement provision, and later, as to whether the MVFRL applied to that provision—an interpretation Mr. Yost's lawyer never relied upon, because he had challenged Anthem's assertions from the beginning.

And it was this dispute that led to this lawsuit. *Cf. Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp. 2d 438, 453 (E.D. Pa. 2012) ("Dismissal is warranted where a plaintiff fails to specify *how* a particular disclosure was misleading or to allege the information that defendants knew but did not disclose") (emphasis in original). Mr. Yost's tort recovery, while restrained from use, was never transferred to Anthem because his lawyer never relied upon Anthem's assertions of its legal position. Because the Amended Complaint attaches the entirety of the relevant email chain between Anthem and Mr. Yost's lawyer, and because Mr. Yost bases his misrepresentation claim only on Anthem's assertions of its right to reimbursement, on which he did not rely, an opportunity for leave to amend would be futile.

Count IV is dismissed with prejudice for failure to state a claim.

### C. Count V: Breach of Fiduciary Duty – Duty of Loyalty

Mr. Yost separately brings a breach of fiduciary duty claim under duty of loyalty principles, alleging that Anthem had "conflicts of interest by administering the Plan in a way favorable to itself and adversely to the participants and beneficiaries..." and that Anthem has a "systematic" practice of recovering reimbursement money contrary to Pennsylvania law. Doc. 26 ¶¶ 51, 124. Under the relevant ERISA provisions, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1)(B). "A fiduciary with respect to a plan shall not... deal with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1).

Mr. Yost argues that because the plan is a "fully insured disability policy and not from a self-funded Plan," any money Anthem recovers from its reimbursement provision "goes to Anthem." Doc. 32 at 11. "No money goes 'into the pot' to fund the benefits for other employees." *Id.* [2] Anthem argues that the allegations are conclusory on this count, as there are "no factual allegations that Anthem Life placed its own…interests above those of the participants or beneficiaries." Doc. 33 at 14.

At the outset, the Court finds the breach of duty of loyalty claim to be wanting in substantive factual allegations, but nevertheless finds it to skirt past *Twombly/Iqbal* standards. *Cf. Drzala*, 2016 WL 2932545, at *5 (holding that allegation that Defendants "acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan," combined with the attachment of the plan to the complaint, were "sufficient to meet the *Iqbal/Twombly* pleading standard" in pleading that Defendants qualified as a fiduciary). Had the plan been self-insured, it would have "greatly reduce[d] potential bias" because any money the plan administrator got back from Mr. Yost would have gone to the plan assets. *Stevens v. Santander Holdings USA, Inc.*, 2013 WL 322628, at *8 (D.N.J. Jan. 28, 2013).

The plan in this case, which is attached to the Amended Complaint, shows that Anthem is the plan administrator as well as the insurance company that underwrites the

---

[2]    The parties have represented, prior to the filing of the Amended Complaint, "that the Plan at issue is not a self-funded plan." *Yost*, 2016 WL 4151214, at *4 n.2 (citing July 29, 2016 Hr'g Tr. at 8:4-7). Thus, if Anthem recovers money from asserting a right of reimbursement, the funds would not go back into the pool for the benefit of other beneficiaries of the same plan, but rather, go to the company.

17

policy. In the context of judicial review of benefit determinations by an ERISA fiduciary for abuse of discretion, the Supreme Court has said that "a plan administrator [who] both evaluates claims for benefits and pays benefits claims creates [a] 'conflict of interest'." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 128 S. Ct. 2343, 2348, 171 L. Ed. 2d 299 (2008). The Court went on to reason that "[t]he answer to the conflict question is less clear where (as here) the plan administrator is not the employer itself but rather a professional insurance company." *Id.* The Court acknowledged that an insurance company in the business of selling policies in the marketplace would aspire to honest business practices, since "the marketplace (and regulators) may well punish an insurance company" when it offers subpar or biased claims processing. *Id.* "Conceding these differences," the Supreme Court nonetheless held that a conflict exists for insurers administering ERISA plans, in part because "ERISA imposes higher-than-marketplace quality standards on insurers." *Id.* "It sets forth a special standard of care upon a plan administrator, namely, that the administrator 'discharge [its] duties...solely in the interests of the participants and beneficiaries.'" *Id.* (citing § 1104(a)(1)).

The Third Circuit has applied *Metro. Life* in the context of reviewing the plan administrator's denial of benefits, which almost always occurs at the summary judgment stage. The distinction is all the more reason to refrain from judgment on a motion to dismiss. The Third Circuit has instructed that the factual "circumstances of the conflict itself may render it more or less significant...if 'the administrator has taken active steps to reduce

18

potential bias and to promote accuracy...by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking'...then the conflict may be said to have been unlikely to infect the administrator's decision." *Dowling v. Pension Plan For Salaried Employees of Union Pac. Corp.*, 871 F.3d 239, 250 (3d Cir. 2017) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, (1989)). If there is "an inherent structural conflict of interest," the court should "examine the process by which the administrator came to its decision to determine whether there is evidence of bias." *Malishka v. Metro. Life Ins. Co.*, 2014 WL 4851509, at *6–7 (E.D. Pa. Sept. 30, 2014), *aff'd*, 639 F. App'x 788 (3d Cir. 2015)

None of this information is available to the Court at this time. There is no fact discovery as to whether Anthem's inherent structural conflict has "infected" its decision to claw back the benefits it paid Mr. Yost, or whether Anthem has "taken active steps to reduce potential bias" in claims processing. *Id.* The information necessary to evaluate the conflict of interest can only come from the judicial process of discovery. *Charles v. UPS Nat. Long Term Disability Plan*, 2013 WL 6080163, at *2 (E.D. Pa. Nov. 19, 2013) (holding that additional discovery is needed for the court "to determine how, if at all, this conflict may have affected the benefits determination in deciding whether the decision was an abuse of discretion"). Thus, the Court finds that the allegations that Anthem has a "systematic" practice of recovering reimbursement money contrary to Pennsylvania law "in a way

favorable to itself and adversely to the participants" raise a plausible inference that Anthem breached its fiduciary duty due to a conflict of interest. Doc. 26 ¶¶ 51, 124.

The motion to dismiss Count V for failure to state a claim is denied.

## D. Disputes Over Relief Sought in the Amended Complaint

Finally, the parties argue over whether equitable relief granted pursuant to ERISA § 502(a)(3) may include monetary damages, and whether such damages may include prejudgment interest. The type of relief demanded in a complaint is not a legal claim, and therefore should not be considered on a motion to dismiss. Additionally, it makes for pragmatic sense to address any issues of damages at summary judgment—because it may well turn out that there are no monetary damages to speak of. However, the Court notes the following for the parties' elucidation.

**Prejudgment Interest:** Prejudgment interest should be awarded when "the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 208 (3d Cir. 2004). The Court is without information as to whether the disputed funds held by Mr. Yost's lawyer are in an interest bearing account (if so, then interest would presumably accrue from the account, and Anthem should not be obligated to pay additional interest, unless expert discovery raises a dispute over the method of interest calculation). This question would be better addressed after discovery, when the record may

20

reveal whether the interest accrued on the disputed funds is sufficient to make Mr. Yost whole.

**Monetary Damages for Breach of Duty Claims:** Anthem argues that claims for monetary damages for Counts IV and V should not be awarded because "they are compensatory or punitive, as opposed to equitable, in nature." Doc. 33 at 17. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), participants and beneficiaries may sue "to enjoin any act or practice which violates any provision of this subchapter [e.g., fiduciary provisions] or the terms of the plan, or...to obtain other appropriate equitable relief..." The Supreme Court has said that money damages in the form of a "surcharge" against an ERISA fiduciary may be appropriate as a form of equitable relief. *CIGNA Corp. v. Amara*, 563 U.S. 421, 434, 131 S. Ct. 1866, 1875, 179 L. Ed. 2d 843 (2011). *See also New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134–35 (2d Cir) (collecting cases) ("where, as here, a plan participant brings suit against a plan fiduciary...any resulting injunction coupled with surcharge—monetary compensation for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment—constitutes equitable relief under § 502(a)(3)") (internal quotation marks omitted) *cert. denied sub nom. UnitedHealth Grp., Inc. v. Denbo*, 136 S. Ct. 506, 193 L. Ed. 2d 397 (2015).

Anthem points to *Montanile v. Bd. of Trustees of Nat. Elevator Indus.*, 136 S. Ct. 651, 660, 193 L. Ed. 2d 556 (2016), which stated in a footnote that "the Court's discussion of § 502(a)(3) in *CIGNA* was not essential to resolving that case." But this neither overrules

*CIGNA* nor undermines its reasoning. The *Montanile* plaintiffs demanded to enforce an equitable lien against a defendant's "general assets," as opposed to "specifically identifiable funds that were within [Defendant's] possession and control." *Id.* 136 S. Ct. at 654. Such is not the case here, where there are specifically identifiable funds on which Mr. Yost stakes a claim—namely the funds held in his lawyer's escrow account that cannot be distributed to him unless and until this lawsuit is resolved.

In any event, whether any monetary relief is appropriate is a fact intensive question best left to discovery. The Court will "not reach the particulars of what may and may not be compensated through equitable surcharge, as that inquiry is not properly before the Court at this time." *Desue v. Aetna Life Ins. Co.*, 2017 WL 528241, at \*4 (W.D. Pa. Feb. 9, 2017) (internal citations omitted).

**Unopposed Issues:** Anthem argued that the remedies requested in paragraphs 7– 13 for Count III under "Relief Demanded" are unavailable. Doc. 31 at 21. The response brief stated it "does not oppose removal of subparagraphs 7-13." Doc. 32 at 19. These paragraphs (found on pages 29–30 of the Amended Complaint) are therefore stricken.

Anthem also argues that mandamus is unavailable in this case, to which Mr. Yost responded that he "does not oppose removal of mandamus. Doc. 31 at 21, Doc. 32 at 21. To the extent the Amended Complaint seeks relief in the form of a writ of mandamus, those portions are stricken.

## V. Conclusion

For the reasons outlined above, Defendant's motion to dismiss the Amended

Complaint (Doc. 26) will be granted in part and denied in part. A separate Order shall issue.

Robert D. Mariani
United States District Judge