# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC YOST,  individually and on : 
behalf of a class of similarly situated : 
individuals, : 
: 
          Plaintiff, : 
   v. :    **3:16-CV-00079**
:    **(JUDGE MARIANI)**
**ANTHEM LIFE INSURANCE** : 
**COMPANY** : 
: 
        Defendant. : 

## MEMORANDUM OPINION
## I. INTRODUCTION

Here the Court considers Defendant Anthem Life Insurance Company's Motion for

Protective Order (Doc. 88).  With this Motion, Defendant asserts that Plaintiff should be

allowed to conduct discovery "with regard to his contended claim for breach of fiduciary duty

as a result of contended conflict of interest only with respect to those topics of testimony

from the four Fed. R. Civ. P. 30(b)(6) notices of deposition served on August 10, 2018 as

limited in the manner requested" by the pending motion.  (Doc. 88 at 1.)  Specifically,

Defendant requests that the Court issue a protective order "precluding Plaintiff from taking

testimony pursuant to the "Plan Attorney" Notice of Deposition and limiting the subjects

regarding which it may be deposed by Plaintiff on the remaining outstanding notices of

deposition to those that have not been the subject of the previous June 14, 2018 Rule

30(b)(6) Notice of Deposition." (*Id.* at 16.) For the reasons discussed below, Defendant's motion will be granted in part and denied in part.

## II. PROCEDURAL HISTORY

Plaintiff Eric Yost, individually and on behalf of a class of similarly situated individuals, filed a putative class action complaint on December 11, 2015, in the Court of Common Pleas of Pike County. (Doc. 2-1). The Complaint alleged three counts. In Count I, Plaintiff sought a declaratory judgment that Defendant may not obtain reimbursement, or assert a right of subrogation against the proceeds of personal injury settlements or verdicts, on motor vehicle claims in accordance with Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. § 1720 ("MVFRL"). (*Id.* at 16-20.) Count II of the Complaint asserted a claim for unjust enrichment. (*Id.* at 21-25.) In Count III, Plaintiff brought a claim for bad faith. (*Id.* at 26-34.) On January 21, 2016, Defendant removed the action to this Court. (Doc. 1.) Thereafter, Defendant filed a Motion to Dismiss, maintaining that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") preempted Plaintiffs claims. (Doc. 7.) The Court granted the motion in part and denied it in part. (Doc. 23.)

Plaintiff filed his Amended Complaint (Doc. 26) on August 18, 2016. The Amended Complaint contains seven counts: Count I for Violation of 75 Pa. C.S.A. § 1720 – Rule of Decision (*id.* at 15-16); Count II for Declaratory Relief (*id.* at 16-20); Count III for Violation of Employee Welfare Benefit Plan and Policy (*id.* at 20-21); Count IV for Breach of Fiduciary

2

Duty – Misrepresentation (*id*. at 22-24); Count V for Breach of Fiduciary Duty – Duty of Loyalty (*id*. at 24-27); and Count VI which identifies "Relief Demanded" (*id*. at 27-34). Defendant filed a motion to dismiss the Amended Complaint (Doc. 30) which the Court granted in part and denied in part (Doc. 39). Specifically, the Court found that, based on the analysis set out in the Memorandum Opinion (Doc. 38), Count I (Rule of Decision) was not properly pled as an independent claim for relief, but contained allegations integral to Count II. (Doc. 39 ¶ 1.) The Court therefore construed the allegations in Count I (Doc. 26 ¶¶ 72–76) as incorporated into Count II (Declaratory Relief) of the Amended Complaint pursuant to Fed. R. Civ. P. 8(f). (*Id*.) The Court found Count VI (Relief Demanded) to be a statement of requested relief and, therefore, the title "Count VI" was stricken from the Amended Complaint (Doc. 26 at 27) and the allegations in Count VI were construed as a prayer for relief. (Doc. 39 ¶ 2.) Regarding Count III, subparagraphs (7)-(13) under Relief Demanded for Count III of the Amended Complaint (Doc. 30 at 29–30), as well as all references to "mandamus" under the Relief Demanded section of the Amended Complaint (Doc. 29 at 29, 31, 33) were stricken. (Doc. 39 ¶ 3.) Count IV (Breach of Fiduciary Duty – Misrepresentation) of the Amended Complaint (Doc. 26 ¶¶ 102-114) was dismissed with prejudice for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 39 ¶ 4.) Defendant's Motion to Dismiss was denied as to Count II (Declaratory Relief), Count III (Violation of Employee Welfare Benefit Plan and Policy), and Count V (Breach of Fiduciary Duty – Duty of Loyalty). (Doc. 39 ¶ 5.)

Plaintiff filed Plaintiff's Motion for Leave of Court to Amend the Complaint (Doc. 55) and a supporting brief (Doc. 56) on July 3, 2018. Defendant filed its opposition brief (Doc. 65) on July 17, 2018. A telephonic status conference was held on July 18, 2018. (*See* Doc. 67.) On July 31, 2018, Plaintiff withdrew Plaintiff's Motion for Leave of Court to Amend the Complaint (Doc. 55). (Doc. 71.)

On July 3, 2018, Defendant filed two motions: Defendant Anthem Life Insurance Company's Dispositive Motion to Deny Class Certification (Doc. 57), and Defendant Anthem Life Insurance Company's Motion for Partial Summary Judgment (Doc. 58). By Orders of March 29, 2019, the Court denied both motions without prejudice. (Docs. 92, 93.) The Court noted that it would set a new dispositive motion deadline following disposition of Defendant Anthem Life Insurance Company's Motion for Protective Order. (Doc. 93 at 3 ¶ 2.)

In correspondence dated July 31, 2018, Plaintiff's counsel requested the Court's assistance in resolving several issues and asked that a conference be scheduled to address the matters identified. (Doc. 72.) One issue related to the Breach of Fiduciary Duty claim contained in Plaintiff's Amended Complaint which survived Defendant's motion to dismiss. (*Id.* at 1.) Counsel asserted that he attempted to schedule a deposition on this claim and Defendant refused to produce a deponent. (*Id.*) In response to the correspondence, the Court issued an Order on August 7, 2018, stating that Plaintiff's letter did not provide sufficient detail to determine whether to hold a conference or direct the parties to file a

4

formal motion. (Doc. 76 at 2.) Therefore, the Court directed further clarification of the issues. (*Id.* at 4.) The Court also directed the parties to proceed by way of formal motion should any new discovery issues arise. (*Id.*)

In correspondence to the Court dated August 10, 2018, Plaintiff's counsel again indicated that the parties were unable to resolve all discovery disputes. (Doc. 79 at 1.) One issue identified was related to the "Breach of Fiduciary Duty Deposition." (*Id.* at 5.) Plaintiff's counsel noted that the parties may have a resolution to this matter and a new deposition notice had been drawn. (*Id.*) Defendant's counsel responded by correspondence of August 14, 2018, and stated the following regarding depositions related to the breach of fiduciary duty claim:

> Plaintiff served Anthem Life with Rule 30(b)(6) notices of deposition with regard to Plaintiff's breach of fiduciary duty claim based on conflict of interest on Friday, August 10, 2018. While Anthem Life still needs to comprehensively review these notices, it notes that the topics of testimony identified in the notices is extremely broad and far-ranging and appear to address many topics well beyond a contended breach of fiduciary duty through the inherent, yet inchoate, conflict of interest identified by the Supreme Court in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008).
>
> Nevertheless, Anthem Life will respond to these notices in good faith. If any disputes ultimately arise from these notices, Anthem Life presumes that the parties will address such disputes by way of formal motion as set forth in this Court's August 7, 2018 Order (Doc. No. 76).

(Doc. 80 at 5.)

By Order of August 16, 2018, the Court addressed the Rule 30(b)(6) depositions as follows:

5

with respect to the Rule 30(b)(6) depositions relating to the Breach of Fiduciary Duty claim, Defendant has averred that it is still reviewing the deposition notices and "will respond to these notices in good faith." Doc. 80 at 5. Thus, Plaintiff's request for Rule 30(b)(6) desposition(s) is granted; Defendant shall designate one or more officers, directors, managing agents, or any other persons who consent to testify on its behalf for a deposition to be taken by Plaintiff. If any dispute arises from this deposition notice or any other issued by either party, the parties shall address such disputes by way of formal motion as in accordance with this Court's August 7, 2018 Order. Doc. No. 76.

(Doc. 81 at 4-5.) At the time, the Court was not provided with copies of the August 10,

2018, notices.

On August 28, 2018, the parties filed the Motion to Adjourn Deposition and to Adjust

Case Schedule Pending Anthem Life's Motion for Protective Order (Doc. 85). The Court

granted the motion, ordering that the depositions currently scheduled be adjourned, allowing

Defendant time to file a motion for a protective order, and holding the case schedule in

abeyance pending the Court's decision on the motion. (Doc. 86.)

Defendant Anthem Life Insurance Company's Motion for Protective Order (Doc. 88),

the Motion now under consideration, was timely filed and is fully briefed and ripe for

disposition.

## III. STATEMENT OF FACTS

### A. Plaintiff's Amended Complaint

The following facts are taken from Plaintiffs Amended Complaint. (Doc. 26.) Plaintiff

Eric Yost was insured for disability benefits under a Group Plan issued by Defendant

through Finisar Corporation, Plaintiffs former employer. (Doc. 26 ¶ 6.) On February 2,

6

2013, Plaintiff was injured in a of a motor vehicle accident, rendering him temporarily disabled. (*Id.* ¶ 7.) As a result of his temporary disability, Plaintiff submitted a claim for short term disability benefits to Defendant. (*Id.* ¶ 8.) Thereafter, Defendant paid disability benefits in the amount of $5,654.40 to Plaintiff for the period beginning February 4,2013 and ending April 23, 2013. (Id. ¶ 9.) As a result of his injury, Plaintiff sought damages against the alleged tortfeasor. (*Id.* ¶ 10.) The tortfeasor's insurer settled the action and made payment to Plaintiff in compensation for the personal injuries he sustained in the motor vehicle accident. (*Id.* ¶ 11.) Defendant then asserted a claim for reimbursement of the short term disability benefits paid to the Plaintiff in the amount of $6,997.25. (*Id.* ¶¶ 12,14.) The parties then attempted to negotiate a settlement as to the reimbursement Defendant asserted it was owed by Plaintiff. (*Id.* ¶¶ 14-20.) Defendant has continued to assert a claim for reimbursement of the short term disability benefits paid to the Plaintiff. (*Id.* ¶ 24.) As a result, Plaintiff's counsel "has been forced to refuse to distribute to Mr. Yost the money in dispute" (*id.* ¶ 26), leaving Plaintiff "subject to suit and loss of benefits based on the dispute over the subject funds" (*id.*).

## B.  Defendant Anthem Life Insurance Company's Motion for Protective Order

The following facts are taken from Defendant's brief in support of the pending motion supplemented by facts of record the Court deems relevant. (Doc. 88-1 at 6.) The Court relies on Defendant's factual recitation because Plaintiff's opposition contains no counter-statement of the facts (*see* Doc. 89), and Defendant's statement (Doc. 88-1 at 6-9) is

7

properly deemed adopted pursuant to Rule 7.8(a) of the Middle District of Pennsylvania

Rules of Court.

> Before serving the deposition notices at issue with the pending motion,

> Plaintiff served an initial Fed. R. Civ. P. 30(b)(6) deposition notice (hereinafter the "June 14, 2018 Notice of Deposition") on Anthem Life that called, generally, for testimony regarding Anthem Life's subrogation activities regarding motor vehicle accident disability claims made by putative class members and also testimony regarding the search for, identification of, and production of documents in response to Plaintiff's first requests for production of documents on both an individual and class basis. Anthem Life identified, prepared, and produced a witness—Louise Patton —to testify as its corporate representative. That Rule 30(b)(6) deposition went forward for approximately four hours on June 14, 2018.

(Doc. 88-1 at 6-7.) Since this deposition, Patton retired and is no longer employed by

Defendant. (*Id.* at 7 n.1.)

Following the deposition, Patton subscribed to a declaration on June 25, 2018,

identifying her position as Director of Life & Disability Claims Operations. (Doc. 88-6 at 2.)

The declaration was submitted in support of Defendant Anthem Life Insurance Company's

Dispositive Motion to Deny Class Certification (Doc. 57). (Doc. 88-1 at 8.) The declaration

details aspects of Defendant's search for, identification of, and production of documents

responsive to Plaintiff's first set of individual and class requests for production of documents

and includes details of that process that were not explored by Plaintiff in examination at the

June 14, 2018, Rule 30(b)(6) deposition. (*Id.* at 7.)

At some time after the June 14, 2018, deposition, Defendant agreed to produce a

witness to testify regarding fiduciary duty topics. (Doc. 88-1 at 8.) Defendant agreed to do

so because Plaintiff wanted to examine fiduciary duty topics at Patton's deposition though

such topics had not been identified in any notice of deposition. (*Id.*) As a result of the

agreement, Plaintiff issued four deposition notices on August 10, 2018. (*Id.*) These are the

deposition notices that are the subject of Defendant's pending motion. (Doc. 88.)

## IV. ANALYSIS

Defendant states that it seeks a protective order "in connection with a series of Fed.

R. Civ. P. 30(b)(6) deposition notices issued by Plaintiff that seek impermissibly to intrude

on the attorney-client privilege and constitute impermissible attempts at second corporate

representative depositions of the same party on the same topics without good cause or

court permission." (Doc. 88-1 at 4.) Defendant posits that the August 10, 2018, notices are

not limited to the subject of Plaintiff's fiduciary duty/conflict of interest claim and seek to

revisit the same subject matter that Plaintiff should have explored at the June 14, 2018,

deposition, i.e., Defendant's search for, identification of, and production of documents.

(Doc. 88-1 at 8-9.) As required by Rule 7.8(a) of the Middle District of Pennsylvania Rules

of Court, Defendant provides a Statement of Questions Involved:

> 1. Should the Court issue a protective order forbidding Plaintiff from deposing
> Anthem Life pursuant to the "Plan Attorney" Notice of Deposition where Topics
> 1 and 3 of the notice seek to impermissibly invade the attorney-client privilege
> and where the discovery previously produced demonstrates there were no
> communications satisfying Topic 2?
>
> . . . .

9

2. Should the Court issue a protective order forbidding Plaintiff from deposing Anthem Life pursuant to Topic 5 of the "Patton 1" Notice of Deposition to the extent it inquires about Plaintiff's first requests for production of documents?

. . . .

3. Should the Court issue a protective order forbidding Plaintiff from deposing Anthem Life pursuant to the "Patton 2" Notice of Deposition where the notice seeks to impermissibly re-depose Anthem Life on the same topics that were noted as the subject matter of the June 14, 2018 Rule 30(b)(6) deposition?

. . . .

4. Should the Court issue a protective order forbidding Plaintiff from deposing Anthem Life pursuant to Topic 1 of the "Pruitt" Notice of Deposition to the extent it inquires about Paragraphs 11 through 15 of the Declaration of M. Catherine Pruitt?

. . . .

5. Should the Court issue a protective order forbidding Plaintiff from deposing Anthem Life pursuant to Topic 2 of the "Pruitt" Notice of Deposition where the topic seeks to impermissibly re-depose Anthem Life on a topic on which Anthem Life was already deposed on June 14, 2018?

(Doc. 88-1 at 9-10.)[1]

It is well-established that a party wishing to obtain a protective order must

demonstrate that "good cause" exists for the order of protection. *Pansy v. Borough of*

*Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing Fed. R. Civ. P. 26(c)). Upon a showing

of good cause, the court may "issue an order to protect the party . . . from annoyance,

---

[1] Because Plaintiff's opposition contains no counter-statement of questions involved (*see* Doc. 89), Defendant's statement (Doc. 88-1 at 9-10) is deemed adopted pursuant to Rule 7.8(a) of the Middle District of Pennsylvania Rules of Court.

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Pertinent provisions of Federal Rule of Civil Procedure Rule 30 provide the following:

> (a) When a Deposition May Be Taken.
>
> (1) *Without Leave.* A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.
>
> (2) *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):
>
>> (A) if the parties have not stipulated to the deposition and:
>>
>>> (i) the deposition would result in more than 10 depositions being taken under this rule ... by the plaintiffs, or by the defendants, or by the third-party defendants; [or]
>>>
>>> (ii) the deponent has already been deposed in the case[.]

Fed. R. Civ. P. 30(a)(2)(A).

Advisory Committee Notes indicate that "[a] deposition under Rule 30(b)(6) should, for purposes of th[e] limit [identified in Rule 30(a)(2)(A)(i)], be treated as a single deposition even though more than one person may be designated to testify." Fed. R. Civ. P. 30 Advisory Committee Note 1993 Amendment.

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227 (E.D. Pa. 2008), concluded that "[n]either the text of [Rule 30(a)(2)(A)(ii)] nor the committee's note exempts Rule 30(b)(6) depositions from the leave requirement in the event of a second deposition of a party already deposed." 254 F.R.D. at 234.

The policy against permitting a second deposition of an already-deposed deponent is equally applicable to depositions of individuals and organizations. Taking serial depositions of a single corporation may be as costly and burdensome, if not more so, as serial depositions of an individual. In both cases, each new deposition requires the deponent to spend time preparing for the deposition, traveling to the deposition, and providing testimony. In addition, allowing for serial depositions, whether of an individual or organization, provides the deposing party with an unfair strategic advantage, offering it multiple bites at the apple, each time with better information than the last.

254 F.R.D.at 234–35.

Rule 30 also sets out specific requirements for notices of deposition directed to an

organization:

In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6).

Rule 30 works in tandem with the discovery scope and limitation provisions set out in

Rule 26. Regarding scope in general, the rule provides that

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

12

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Pertinent to the matters before the Court, discovery may be limited: "By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30." Fed. R. Civ. P. 26(b)(2)(A). Limitations on the frequency and extent of discovery is required in certain circumstances:

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Defendant asserts as a preliminary matter that no party should be able to take the deposition of any given deponent more than once pursuant to Rule 30(a)(2)(A)(ii). However, Defendant's agreement to be deposed on the issue of fiduciary duty indicates that leave of court was not required for the deposition to which Defendant agreed. Given that Plaintiff did not counter Defendant's statement of facts, Defendant's agreement to be

deposed was limited to fiduciary duty topics. (Doc. 88-1 at 8.) Although Plaintiff did not seek leave of court to depose Plaintiff on any other topic before serving the August 10, 2018, deposition notices, the analysis of the proper scope of Defendant's second deposition does not end with Defendant's agreement to be deposed on fiduciary duty matters for the reasons discussed below.

In the course of informal presentation and consideration of discovery matters, by Order of August 16, 2018, the Court directed Defendant to designate a representative or representatives to testify at the noticed deposition(s) (Doc. 81 at 4-5). The Court did not limit the subject matter of the deposition(s) or address the topics identified in Plaintiff's August 10, 2018, Notices. (*Id.*) The Court directed the parties to address any related dispute by way of formal motion (*id.* at 4) and Defendant has done so. As noted in *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227 (E.D. Pa. 2008), leave is not required to conduct a second Rule 30(b)(6) deposition which is ordered by the court. *Id.* at 235 n.7. Because the Court ordered the deposition(s) now at issue (Doc. 81 at 4-5), in the unique circumstances presented here, Plaintiff has not run afoul of the requirements of Rule 30(a)(2)(A)(ii).

The Court will therefore address the questions presented by Defendant. However, the Court need not address whether to issue a protective order "forbidding Plaintiff from deposing Anthem Life pursuant to the 'Patton 2' Notice of Deposition" (Doc. 88-1 at 9) because Plaintiff has withdrawn that Notice of Deposition due to Patton's retirement (Doc.

14

89 at 23). Before undertaking consideration of the remaining questions involved, the Court

notes that the designations of the remaining August 10, 2018, notices as "'Plan Attorney'

Notice of Deposition," "'Patton 1' Notice of Deposition," and "'Pruitt' Notice of Deposition" do

not seek the deposition of specific individuals but leave Defendant to designate a

representative. (See Doc. 89 at 21 n.8.)

## A.    Plan Attorney Notice of Deposition

Defendant asserts that it is not properly deposed on any of the topics for testimony

identified in the Plan Attorney deposition notice which seeks information regarding the

following:

> 1. Communications or documents regarding the administration of the Plan
> concerning subrogation shared between the Plan, its administrators, trustees,
> or other fiduciaries, and any attorney assisting in the administration of the Plan,
> prior to the outset of the instant litigation.
>
> 2. Any and all communications to beneficiaries of the Plan from any attorney
> assisting in the administration of the Plan concerning subrogation.
>
> 3. Advice relating to []legal compliance, alternatives, or strategy regarding the
> operation of the plan insured by Anthem Life.

(Doc. 88-1 at 12 (citing Ex. B [Doc. 88-4]).)

1.    Topics 1 and 3

Defendant first argues that topics 1 and 3 seek to invade the attorney client privilege

by seeking to discover communications between Defendant's employed attorneys and those

involved in the administration of the Plan. (Doc. 88-1 at 12.) Noting that Plaintiff has

argued that the fiduciary exception to the attorney-client privilege provides a basis to invade

15

the privilege in the circumstances presented here, Defendant maintains that the Third

Circuit Court of Appeals held otherwise in *Wachtel v. Health Net, Inc.*, 482 F.3d 225 (3d Cir.

2007). (Doc. 88-1 at 13.)

Before addressing the fiduciary exception discussed in *Wachtel*, it is helpful to

consider the general legal framework within which attorney-client privilege issues and

exceptions to the privilege are to be considered.

*Wachtel* considered the privilege and its exceptions from a historical perspective,

noting that "[f]or centuries, the common law has recognized 'as a fundamental maxim that

the public ... has a right to every man's evidence' and 'that any exemptions which may exist

are distinctly exceptional, being so many derogations from a positive general rule.'" 482

F.3d at 231 (quoting 8 J. Wigmore at § 2192). The privilege originated in sixteenth century

England, 8 J. Wigmore at § 2290, and the common law development continued in the

federal courts of the United States. *Wachtel*, 482 F.3d at 230. In its present form,

> [t]he attorney-client privilege protects communications between attorneys and
> clients from compelled disclosure. It applies to any communication that satisfies
> the following elements: it must be "(1) a communication (2) made between
> privileged persons (3) in confidence (4) for the purpose of obtaining or providing
> legal assistance for the client." Restatement (Third) of the Law Governing
> Lawyers § 68 (2000). "Privileged persons" include the client, the attorney(s),
> and any of their agents that help facilitate attorney-client communications or
> the legal representation. *Id.* § 70.

*In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct.

12, 2007). The party asserting the privilege bears the burden of proving that it

applies. *See In re Grand Jury,* 705 F.3d 133, 160 (3d Cir.2012) (citations omitted).

16

Privilege issues are preliminary questions decided by the court. Fed. R. Evid. 104(a). In deciding a privilege issue, the court is not bound by evidence rules except those regarding privilege. *Id.* "Because the attorney-client privilege has this effect of withholding relevant information from fact-finders, federal courts must apply it only where necessary to achieve its purpose." *Wachtel*, 482 F.3d at 231 (citing *Fisher v. United States,* 425 U.S. 391, 403 (1976)). "The privilege will extend only to advice which is legal in nature. Where a lawyer provides non-legal business advice, the communication is not privileged. Similarly, the protections of the privilege are restricted to those communications which are made in confidence, since a client who speaks openly or in the presence of a third party needs no promise of confidentiality to induce disclosure." *Wachtel,* 482 F.3d at 231 (internal citations omitted). When called upon to evaluate the nature and scope of an evidentiary privilege, federal courts must "engage in the sort of case-by-case analysis that is central to common-law adjudication." *Wachtel,* 482 F.3d at 231 (citing *Upjohn Co. v. United States,* 449 U.S. 383, 386 (1981)).

As explained in *O'Blenis v. Nat'l Elevator Indus. Pension Plan*, No. 2:13-CV-05842 SRC, 2015 WL 3866229 (D.N.J. June 18, 2015), the fiduciary exception to the attorney-client privilege in the ERISA context

> stems from the principle that an ERISA fiduciary has an obligation 'to provide full and accurate information to the plan beneficiaries regarding the administration of the plan" including the obligation to "make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan." *In re Long Island Lighting Co.,* 129 F.3d 268, 271–72 (2d Cir.1997) (citations omitted). This is because,

17

in the fiduciary context, "it is the beneficiary, rather than the trustee who is the 'client'" for purposes of the attorney-client privilege. *Wachtel*, 482 F.3d at 232. . . . Thus, many courts have held that an entity acting in the capacity of ERISA fiduciary is barred from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration. *Wachtel*, 482 F.3d at 229–30 (collecting cases from sister circuits as well as from district courts in the Third Circuit).

2015 WL 3866229, at *4.

*Wachtel* considered "whether the fiduciary exception to the federal attorney client privilege applied with equal force to all fiduciaries under ERISA." 482 F.3d at 230. At the outset, *Wachtel* stated the following:

This appeal requires us to consider the application of a common-law evidentiary rule known as the "fiduciary exception" to the attorney-client privilege. Under this exception to the privilege, certain fiduciaries who obtain legal advice in the execution of their fiduciary obligations are precluded from asserting the attorney-client privilege against their beneficiaries. Although the fiduciary exception has been adopted by a number of other federal courts of appeals, we have not yet had the opportunity to decide whether the rule should apply within our circuit. We decline to make that decision today because we hold that, even if we were to adopt the fiduciary exception, the exception would not apply to the defendants in this case.

482 F.3d at 226-27. In considering the scope of the fiduciary duty exception under ERISA, *Wachtel* first looked at early cases which applied the exception and concluded that the exception might not apply in every fiduciary situation; where it had been found applicable, the ERISA fiduciaries at issue had strong parallels to trustees, were actually trustees, or were plan sponsors. *Id.* at 233 (citing *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 585-86 (N.D. Ill. 1981); *Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star Co.*, 543 F. Supp. 906, 909 (D.D.C. 1982)). Thus, *Wachtel* did not find justification for the

18

broad application of the *Washington Star* pronouncement that "'[w]hen an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally but, rather, the trust's beneficiaries.'" 482 F.3d at 233 (quoting *Washington Star* at 909). Rather, *Wachtel* concluded that *Washington Star* "simply did not consider whether the fiduciary exception applied with equal force to all ERISA fiduciaries." *Id.*

*Wachtel* then reviewed two recognized situations in which the fiduciary exception does not apply:

> First, under the "liability exception," a fiduciary, seeking the advice of counsel for its own personal defense in contemplation of adversarial proceedings against its beneficiaries, retains the attorney-client privilege. [*United States* v. *Mett,* 178 F.3d 1058, 1063–64 (9th Cir. 1999)]; *Riggs* [*National Bank of Wash., D.C., v. Zimmer,* 355 A.2d 709, 711 (Del. Ch. 1976)]. Second, under the "settlor exception," courts distinguish between fiduciary acts and settlor acts, the former being discretionary acts of plan administration and the latter involving the adoption, modification, or termination of an employee benefit plan. *See* 29 U.S.C. § 1002(21)(A)(iii); *Aetna* [*Health Inc. v. Davila,* 542 U.S. 200, 220 (2004)] ; *Lockheed Corp. v. Spink,* 517 U.S. 882, 891 . . . (1996). The fiduciary exception does not apply to settlor acts because such acts are more akin to those of a non-fiduciary trust settlor than they are to those of a trustee. *See Lockheed,* 517 U.S. at 891 . . . ; *Bland* [*v. Fiatallis North Am. Inc.,* 401 F.3d 779, 787–88 (7th Cir. 2005)].

482 F.3d at 233. The Circuit Court found that these two exceptions share a common justification in that they "both allow the attorney-client privilege to remain intact for an ERISA fiduciary when its interests diverge sufficiently from those of the beneficiaries that the justifications for the fiduciary exception no longer outweigh the policy underlying the attorney-client privilege." *Id.* at 234. In these situations, "[t]he beneficiaries are no longer

the real clients, and disclosure of attorney-client communications is no longer an obligation."

*Id.* Observing that "ERISA fiduciaries . . . come in many shapes and sizes," *id., Wachtel*

found that "the logic underlying the fiduciary exception [did not apply] equally to all," *id.,* and

concluded "that the fiduciary exception does not apply to an insurer like [the defendant] and

its corporate parents because the plaintiff-beneficiaries are not the 'real' clients obtaining

legal representation," *id. Wachtel* reasoned as follows:

> In some respects, an insurer providing benefits to the beneficiaries of an
> ERISA-regulated plan is no differently situated than a plan administrator or an
> ERISA trustee. All are considered to be fiduciaries under ERISA, and all owe
> duties of loyalty and care to their beneficiaries. Because they are fiduciaries,
> they must act in furtherance of their beneficiaries' interests. Nonetheless,
> significant differences exist between insurance company fiduciaries such as
> [the defendant] and other ERISA fiduciaries to whom the fiduciary exception
> has been applied.

482 F.3d at 234.

Based on this language and *Wachtel's* historical analysis, the distinction between

trustees, plan sponsors, and plan administrators on the one hand and insurance company

fiduciaries such as the defendant in the case on the other is an important one in that

*Wachtel* ultimately decided that the latter was not subject to the fiduciary exception to the

attorney client privilege. *Id.* at 234-38. In drawing a distinction between the two groups,

*Wachtel* noted two significant differences between the groups: the identity of the entity for

whom the legal advice is given and the fiduciary's duty of disclosure. *Id.* at 234-36.

Regarding the identity of the client, *Wachtel* identified four relevant factors: "unity of

ownership and management, conflicting interests regarding profits, conflicting fiduciary

obligations, and payment of counsel with the fiduciary's own funds." *Id.*at 236. Based on consideration of these factors, the Circuit Court concluded that "an insurer which sells insurance contracts to ERISA-regulated benefit plans is itself the sole and direct client of counsel retained by the insurer, not the mere representative of client-beneficiaries, and not a joint client with its beneficiaries." *Id.* The Circuit Court added that if "the insurer's counsel [were] to also represent the beneficiaries who seek to maximize their benefit payments, that counsel would face a direct conflict of interest under any standard of legal ethics. It would be odd indeed if ERISA were to force lawyers into precisely this conflicted role." *Id.*

*Wachtel* considered the duty of disclosure separately: "Even though we conclude that [the defendant] and its corporate parents are the sole and direct clients of their retained counsel, we must also consider a second rationale for applying the fiduciary exception—the fiduciary's duty of disclosure." *Id.* This duty originates in "[t]he obligation of a trustee to disclose to beneficiaries the advice of counsel retained by the trust [which] has been recognized in each of three Restatements of Trusts." *Id.* (citing Restatement (First) of Trusts § 173 (1935); Restatement (Second) of Trusts § 173 (1959); Restatement (Third) of Trusts § 82 cmt. f (Tentative Draft No. 4, 2005)). *Wachtel* concluded that, although some courts had used language "broad enough to suggest that every ERISA fiduciary has an obligation to disclose counsel's statements to its beneficiaries," *id.* (citing *LILCO*, 129 F.3d at 271-72), such broad language "does not represent an intentional expansion of the fiduciary exception," *id.* Rather, "[b]ecause fiduciary duties under ERISA 'draw much of

21

their content from the common law of trusts,' *Varity* [*Corp. v. Howe*, 516 U.S. 489, 496

(1996)], . . . it is appropriate to apply a trustee's disclosure obligations to ERISA plan

administrators who operate as trustees." 482 F.3d at 236. *Wachtel* further reasoned that

> [w]hen Congress extended obligations under the common law of trusts to reach
> entities which had not been deemed to be trustees under the common law . . .
> Congress did not intend to expand the full panoply of trustees' obligations to
> every entity which might be designated a fiduciary under ERISA. Specifically,
> Congress provided that the assets of an insurance company need not be held
> in trust. 29 U.S.C. § 1103(b)(1)-(2). For that reason, we do not believe that
> Congress intended to impose upon insurance companies doing business with
> ERISA-regulated plans the same disclosure obligations that have been
> imposed upon trustees at common law. Section 1103(b)(1)-(2) excepts insurers
> from trustee-like obligations; we see no reason to impose trustee-like
> disclosure obligations upon an entity excepted from ERISA's analogy to trust.
> Thus, simply because an insurer has certain limited fiduciary obligations under
> ERISA, those obligations are not coextensive with the common law obligations
> of a trustee.

482 F.3d at 236.

Within this legal framework, the question of whether Defendant is entitled to invoke

the attorney client privilege to preclude Plaintiff from deposing Defendant on topics 1 and 3

in the Plan Attorney Deposition Notice (Doc. 88-4 at 2-3) depends on whether Defendant is

a plan administrator who would not be exempt from disclosure under *Wachtel* or an insurer

who is the type of ERISA fiduciary to whom the fiduciary exception to the attorney client

privilege would not apply. This distinction presents a threshold issue of whether Defendant

is the plan administrator rather than a limited-purpose fiduciary.

Defendant argues that *Wachtel* is dispositive and is fatal to Plaintiff's argument that

he is entitled to the information sought with the Plan Attorney Deposition Notice under the

fiduciary exception. (Doc. 88-1 at 14.) Among his arguments, Plaintiff asserts that

distinctions between this case and *Wachtel* dictate a different result: "neither Health Net nor

any of its subsidiaries were plan administrators for any of the plaintiffs' benefit plans. Nor did

the plaintiff in *Wachtel* allege that Health Net had breached its fiduciary duty of loyalty it

owed to the plaintiff."[2] (Doc. 89 at 17.)

ERISA's definitional section provides the following definition of "administrator":

(16)(A) The term "administrator" means—

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor; or
>
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

(B) The term "plan sponsor" means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee

---

[2] By correspondence of October 15, 2018, Plaintiff's counsel withdrew the second basis for the distinction, acknowledging that it was based on a misreading of the docket. (Doc. 91 at 1.) Although Plaintiff posits several reasons for finding the fiduciary exception applicable, the Court finds them to be without merit. The plan administrator issue discussed in the text is dispositive of the matter at issue. The Court disagrees with Plaintiff's assertion that *Metropolitan Life Ins. Co. v. Glenn*, 554 US 105, 112 (2008), supports the conclusion that all ERISA fiduciaries owe the same fiduciary duties to the beneficiaries of a plan (Doc. 89 at 15-16), in that *Metropolitan* spoke of fiduciary duties generally and the Court did not consider the fiduciary exception to the attorney client privilege. Rather, the issues before the Court were "whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations[,] . . . [and] how any such conflict should be taken into account on judicial review of a discretionary benefit determination." 554 U.S. at 110 (internal quotation omitted).

organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan.

29 U.S.C. § 1002(16)(A).

Evidence shows that the Short Term Disability Plan ("Plan") at issue does not designate an administrator or contain a definition of "administrator" or "plan administrator." (See Doc. 2-1 at 45-49.) The definitional section of the plan defines "Plan Sponsor" as "the employer or other organization that has entered into an agreement with Us as outlined in the Policy." (Id. at 49.) "Us" means the insurer, Anthem Life Insurance Company. (Id. at 50.) Elsewhere in the Plan, Anthem Life "certifies that it has issued a Participation Agreement insuring certain employees of Finisair Corp." (Id. at 41.) Plaintiff was employed by Finisair Corporation during the relevant time period. (Doc. 26 ¶ 6.) Because Plaintiff was employed by Finisair and Finisair entered into the agreement with Anthem Life, Finisair was the ""Plan Sponsor" as defined in the Plan. (Doc. 2-1 at 49.) Because the Plan did not designate an administrator, the term "administrator" for ERISA statutory purposes is the plan sponsor pursuant to 29 U.S.C. § 1002(16)(A)(ii). Thus, under both the Plan definition and that set out in § 2009(16)(B), Finisair Corp. is the plan administrator for the Plan at issue here. This finding is supported by the tax document in evidence, i.e., Form 5500, Annual Return/Report of Employee Benefit Plan, which indicates

that Finisair Corporation is the Plan sponsor and Plan administrator. (Doc. 9-4 at 2,

3.)

With this documentary evidence, the Court concludes that Defendant was not

the plan administrator, as that term is statutorily defined for ERISA purposes, for the

Plan at issue.[3] Therefore, the Court will proceed with an analysis of the factors set

out in *Wachtel*.

---

[3] Plaintiff's argument to the contrary is unavailing. Plaintiff avers that the Court has determined that Defendant is the plan administrator based on a statement made in a Memorandum Opinion issued earlier in the case. (Doc. 89 at 7 (citing Doc. 38 at 17-18).) Plaintiff refers to the statement that "Anthem is the plan administrator" as a "holding" of the Court which is the "law of the case." (Doc. 89 at 7 n.2.) Plaintiff asserts that

> The law of the case doctrine dictates that "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir.1991). The doctrine applies to issues that were actually discussed by the court or decided by necessary implication. *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir.1984).

(Doc. 89 at 7 n.2.)

In the Memorandum Opinion addressing Defendant's motion to dismiss Plaintiff's Amended Complaint, the Court concluded that Plaintiff's Breach of Fiduciary Duty – Duty of Loyalty claim should not be dismissed because the Court did not have sufficient information about the conflict of interest between the parties. (Doc. 38 at 16-20.) Although the Court stated that the Plan "shows that Anthem is the plan administrator," the Court did not base the statement on the statutory definition of administrator but rather on an assessment of the functions conducted by Defendant as those functions might relate to conflicts of interest which may exist when the same entity evaluates claims for benefits and pays benefits claims. (*Id.* at 17-18.) Importantly, the Court made no dispositive determination based on the observation and concluded the Court *could not do so* based on the need to develop the record. (*Id.* at 18-19.) Therefore, contrary to Plaintiff's assertion, the Court made no "holding" regarding a plan administrator. Further, a determination on administrator status, statutory or otherwise, was not necessitated by implication in that the Court found it did not have enough information to dismiss Plaintiff's Breach of Fiduciary Duty – Duty of Loyalty claim based on a lack of information. (Doc. 38 at 19-20.)

25

Regarding "unity of ownership and management," in situations in which the fiduciary exception traditionally has been applied, the fiduciary is managing assets over which it lacks ownership rights. *Wachtel*, 482 F.3d at 234. In contrast, the ERISA requirement that plan assets be held in trust, 29 U.S.C. § 1103(a), is excepted for insurance companies providing insurance contracts, 29 U.S.C. § 1103(b)(1)-(2). *Wachtel*, 482 F.3d at 234. Here, like the *Wachtel* defendant, Defendant does not hold or manage the plan assets. (Doc. 88-1 (citing Beebe Declaration ¶ 7 (Doc. 88-5 at 3))[4].) Therefore, Defendant satisfies the first *Wachtel* factor.

Conflicting interests regarding profits arise "when an insurance company, pursuant to a contract with an employer or benefit plan, determines eligibility for benefits and pays those benefits from its own funds." 425 F.3d at 234. In this situation, "the fund from which monies are paid is the same fund from which the insurance company reaps its profits" which constrasts with "the actuarially determined benefit funds typically maintained by employers (especially in the pension area) that usually cannot be recouped by the employer or directly redound to its benefit." *Id.* at 235.

> [A]s a fiduciary's conflicts with its beneficiaries increase, the beneficiaries' ability to claim that they are the real clients of counsel retained by the fiduciary must diminish. Although the presence of a conflict of interest, without more, may not be enough to render the fiduciary exception inapplicable, it is a factor that weighs in favor of retaining the evidentiary privilege.

---

[4] Citation is to the Declaration of Stephen D. Beebe dated September 6, 2018. (Doc. 88-5 at 2-4.) Beebe is the Senior Associate General Counsel of Anthem, Inc., which provides claims handling for Anthem, Inc. affiliate and Defendant, Anthem Life Insurance Company. (*Id.* ¶ 1.)

482 F.3d at 235. Here Defendant assesses claims through an affiliate and Defendant pays

the claims through its own funds. (Doc. 88-1 at 16 (citing Beebe Dec. ¶ 8 (Doc. 88-5 at 3)).)

Therefore Defendant satisfies the second *Wachtel* factor.

Conflicting fiduciary obligations are found when an insurer handles multiple

ERISA benefit plans at once as well as non-ERISA regulated customers. 425 F.3d

at 235. Such an insurer

> owes distinct duties to each of its customers, including various benefit plans
> and other entities. Even while acting as a loyal fiduciary to the beneficiaries of
> one plan, [the insurer] must be mindful of the duties it owes to the beneficiaries
> of other customer plans, all of whom are paid from the same pool of assets.

*Id.* As in *Wachtel* where the defendant had interests larger and distinct from those

of its beneficiaries, here Defendant sells insurance to multiple employee benefit

plans (Doc. 88-1 at 16 (citing Beebe Dec. ¶ 6 (Doc. 88-5 at 3))) and, therefore, has

conflicting fiduciary obligations.

Finally, Defendant satisfies the fourth factor which considers whether the

insurer pays for legal services using its own assets rather than those of their

beneficiaries, 482 F.3d at 235, because "[w]hen legal advice is needed regarding

benefit determinations under insured plans, Anthem Life pays the cost of that legal

service; it is not paid by or back-charged to the benefit plans." (Doc. 88-1 at 16

(citing Beebe Dec. ¶ 9 (Doc. 88-5 at 3)).)

Having satisfied these four factors, pursuant to *Wachtel*, Defendant is itself

the sole and direct client of counsel retained by the Defendant. *See* 482 F.3d at 236.

Considering Defendant's status pursuant to the duty of disclosure, Defendant is not the plan administrator or trustee of the Plan at issue, *see supra* pp. 23-25 & n.4, or for any of the plans it insures (Doc. 88-1 at 16 (citing Beebe Dec. ¶ 10 (Doc. 88-5 at 3))). Although Defendant and its affiliates carry out administrative functions regarding the review of claims and award of benefits (Doc. 88-1 at 16 (citing Beebe Dec. ¶ 8 (Doc. 88-5 at 3))), as did the defendant in *Wachtel*, 482 F.3d at 227, those functions do not transform its legal status regarding its duty of disclosure because Defendant does not operate as a trustee. As set out above, see supra p. 22,

> [w]hen Congress extended obligations under the common law of trusts to reach entities which had not been deemed to be trustees under the common law . . . Congress did not intend to expand the full panoply of trustees' obligations to every entity which might be designated a fiduciary under ERISA. Specifically, Congress provided that the assets of an insurance company need not be held in trust. 29 U.S.C. § 1103(b)(1)-(2). For that reason, we do not believe that Congress intended to impose upon insurance companies doing business with ERISA-regulated plans the same disclosure obligations that have been imposed upon trustees at common law. Section 1103(b)(1)-(2) excepts insurers from trustee-like obligations; we see no reason to impose trustee-like disclosure obligations upon an entity excepted from ERISA's analogy to trust. Thus, simply because an insurer has certain limited fiduciary obligations under ERISA, those obligations are not coextensive with the common law obligations of a trustee.

482 F.3d at 236. Thus, within the relevant legal framework, although Defendant had fiduciary obligations toward the beneficiaries of the Plan, it did not have a trustee's duty of disclosure toward Plaintiff.

28

Finding no basis to distinguish *Wachtel*, the Court finds that the fiduciary exception to the attorney client privilege does not apply and Defendant's motion is granted as to topics 1 and 3 of the Plan Attorney Notice of Deposition. With this determination, the Court emphasizes it is not stating that Defendant does not have fiduciary responsibilities to beneficiaries of the Plan. Rather, the Court concludes that *Wachtel* makes clear that Defendant's fiduciary responsibilities do not compel application of the fiduciary exception where information traditionally consistent with the attorney client privilege is sought.

2. *Topic 2*

Defendant asserts that Beebe's Declaration shows there are no communications regarding "communications to beneficiaries of the Plan from any attorney assisting in the administration of the Plan concerning subrogation" and, therefore, Defendant should not be required to produce a witness about non-existent communications. (Doc. 88-1 at 17; Doc. 88-4 at 2.) Plaintiff does not dispute this assertion in his responsive brief. (Doc. 89.)

Beebe provided the following information in his Declaration: between January 1, 2010 and August 23, 2016, he was the only attorney who would have provided the information sought, he would have made a notation regarding any such communication, and he has reviewed claims files and there were no notations of any such discussions. (Doc. 88-5 ¶¶ 11-13.)

Based on Beebe's Declaration and Plaintiff's lack of response to Defendant's argument, the Court concludes that Plaintiff has been provided a response to his request for the information sought in Topic 2 in that Beebe's declaration establishes that no such information exists. Therefore, pursuant to Rule 26(b)(2)(C), Plaintiff is not entitled to depose Defendant on the matter requested.

Having found that Plaintiff is not entitled to depose Defendant on any of the matters identified in the August 10, 2018, Plan Attorney Notice of Deposition, the Court concludes that Defendant Anthem Life Insurance Company's Motion for Protective Order (Doc. 88) as to this deposition is properly granted.

## B. Patton 1 Notice of Deposition

Defendant seeks to partially preclude deposition on the matters identified in Topic 5 of what has been identified as the "'Patton 1' Notice of Deposition" (Doc. 88-1 at 18-19) which requests that Defendant designate a person for oral examination concerning "[t]he documents identified in 'Plaintiff's First Demand for Production of Documents Directed to Defendant' and 'Plaintiff's Second Demand for Document [sic]'" (Doc. 88-7 at 3). Defendant asserts that the first half of Topic 5 seeks the same discovery as noticed in the original Rule 30(b)(6) notice of deposition for which it produced a witness on June 14, 2018. (Doc. 88-1 at 19.)

As relates to the limitation sought regarding deposition concerning Plaintiff's first demand for production of documents, the deposition testimony is to be limited if it is

30

cumulative, duplicative, if Plaintiff had ample opportunity to obtain the information, or if it is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). While it appears that Plaintiff had ample opportunity to obtain information regarding his first demand for production of documents, rather than grant Defendant's motion as to this aspect of Topic 5, the Court will deny the motion and caution Plaintiff that strict adherence to the commands of Rule 26 are expected. Should issues arise during the deposition, the Court will be available to rule on whether Plaintiff is seeking testimony regarding matters outside the scope of that allowed by Rule 26.

## C.    Pruitt Notice of Deposition

For the reasons discussed regarding the Patton 1 Notice of Deposition, the Court will deny Defendant Anthem Life Insurance Company's Motion for Protective Order (Doc. 88). The Court does so with the same cautionary notice to Plaintiff and the assurance of the Court's availability to resolve disputed matters at the time of the deposition.

As discussed previously, the Court is guided by the "fundamental maxim" that restrictions on the free exchange of information should be the exception to disclosure of evidence, see supra p. 16, and the broad scope of discovery in general, Fed. R. Civ. P. 26(b)(1). The procedural history of this case has been a winding road marked by filings and disputes which have hindered the orderly progress of the litigation. By allowing the deposition topics in the "'Pruitt' Notice of Deposition," the Court seeks to move this case

toward a long-overdue resolution with matters relevant to that resolution adequately disclosed.

## V. CONCLUSION

For the reasons discussed above, Defendant Anthem Life Insurance Company's Motion for Protective Order (Doc. 88) will be granted in part and denied in part. The Motion will be granted as to the "'Plan Attorney Notice of Deposition"; the Motion will be denied as to the "'Patton 1' Notice of Deposition" and the "'Pruitt' Notice of Deposition." An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Marian
United States District Judge